FILED
2009 Jul-13 PM 04:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| STEPHEN ALEXANDER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | |
| CITY OF MUSCLE SHOALS, | ) | |
| ALABAMA; ROBERT EVANS; | ) | |
| EDDIE LANG; TOMMY | ) | |
| SKIPWORTH; CHARLES | ) | |
| SOCKWELL; CHRIS BROWN; | ) | |
| ASHLEY JONES; JONATHON | ) | |
| TERRY; JOE PAMPINTO; | ) | |
| NEAL WILLIS; JERRY "KNIGHT" | ) | |
| GRISSOM; JAMES "JIM" | ) | |
| HOLLAND; and ALLEN NOLES, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Stephen Alexander complains of defendants, stating as follows:

### Nature of the Action

1.  This is a civil action brought by plaintiff, who was denied certain constitutional rights by defendants in connection with his detention in the Muscle Shoals City Jail. Plaintiff was denied medical treatment for his serious medical needs and was denied his right to a prompt appearance before a judicial officer following his arrest (ordinarily 48 hours), both in violation of his constitutional rights.

## Jurisdiction and Venue

2. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

3. This judicial district is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the suit happened in this judicial district.

## Parties

4. Plaintiff Stephen Alexander is individual residing in Colbert County, Alabama.

5. Defendant City of Muscle Shoals, Alabama is an Alabama municipality. It operates a jail.

6. Defendant Robert Evans is employed by the City as a police officer and as the police chief and had responsibilities that included the City Jail at all relevant times. He is sued in his individual capacity only.

7. Defendant Eddie Lang is employed by the City as a police officer and as a Captain and had responsibilities that included the City Jail at all relevant times. He is sued in his individual capacity only.

8. Defendant Tommy Skipworth was employed by the City as a police

officer and as a Lieutenant and had responsibilities that included the City Jail at all relevant times.  He is sued in his individual capacity only.

9. Defendant Charles Sockwell was employed by the City as a police officer and/or jailer and worked at the City Jail at all relevant times.  He is sued in his individual capacity only.

10. Defendant Chris Brown was employed by the City as a police officer and worked at the City Jail at all relevant times.  He is sued in his individual capacity only.

11. Defendant Ashley Jones was employed by the City as a police officer and worked at the City Jail at all relevant times.  She is sued in her individual capacity only.

12. Defendant Jonathon Terry was employed by the City as a police officer and worked at the City Jail at all relevant times.  He is sued in his individual capacity only.

13. David H. Bradford has been the mayor of the City since 2000.  He is sued in his individual capacity.

14. Joe Pampinto was a member of the City Council at all relevant times.  He is sued in his individual capacity.

15. Neal Willis was a member of the City Council at all relevant times.  He is sued in his individual capacity.

16. Jerry "Knight" Grissom was a member of the City Council at all relevant times. He is sued in his individual capacity.

17. James "Jim" Holland was a member of the City Council at all relevant times. He is sued in his individual capacity.

18. Allen Noles was a member of the City Council at all relevant times. He is sued in his individual capacity.

**Facts**

19. On or about July 10, 2007, Muscle Shoals police officers arrested plaintiff.

20. Between July 10, 2007, and July 19, 2007, plaintiff was not seen by a judicial officer and not allowed to make bail because the municipal judge was on vacation.

21. On July 19, 2007, plaintiff was released based on "time served."

22. Despite requests by plaintiff for his medication for depression, jail personnel would not obtain or provide plaintiff's medication.

23. Plaintiff became depressed and faked a suicide attempt on July 13, 2007, in order to get medical attention.

24. Plaintiff faked suicide by scratching his wrists with a plastic eating utensil. He did not seriously injure himself.

25. Defendant Sockwell contacted plaintiff's parents by phone following the fake suicide attempt, and they brought his medication to the jail.

26. Without consulting any healthcare professional, in response to the fake suicide attempt, jail personnel placed plaintiff in a single cell with a metal bunk and no mattress and stripped plaintiff of his clothes.

27. Plaintiff had access to a toilet and water but no access to a shower.

28. Despite requests to take a shower and plaintiff's obvious need for one, including an odor, plaintiff was not permitted to take a shower during his entire stay at the jail.

29. From July 13 until July 19, 2007, plaintiff was forced to remain naked or nearly so in his jail cell.

30. At one point plaintiff wrapped himself in toilet paper to keep warm.

31. Plaintiff was given some shorts but was forced to use them as toilet paper.

32. The most covering plaintiff had from July 13 through July 19, 2007, was a sheet he was given by a fellow inmate.

33. Plaintiff developed a serious staph infection in his right leg prior to July 15, 2007.

34. By at least July 15, 2007, the staph infection was so bad that plaintiff could not walk.

35. Because of the difficulty plaintiff had walking, plaintiff urinated through the holes in the bunk rather than going to the toilet.

36. By at least July 15, 2007, it was obvious to anyone and everyone in the jail who saw plaintiff, including defendants Sockwell, Brown, Jones, and Terry, that plaintiff needed medical attention.

37. On multiple occasions prior to, on, and after July 15, 2007, plaintiff requested medical attention. He requested medical attention from each and every jailer, including defendants Sockwell, Brown, Jones, and Terry.

38. Defendants Sockwell, Brown, Jones, and Terry were aware by July 15, 2007, of plaintiff's requests for medical attention and his need for medical attention.

39. From at least July 15, 2007, until plaintiff was released from jail on July 19, 2007, the conditions in which plaintiff was forced to remain were unsanitary, dangerous to plaintiff's health, cruel, and inhumane.

40. Defendants Sockwell, Brown, Jones, and Terry were aware by July 15, 2007, of the unsanitary and inhumane conditions of plaintiff's confinement yet took no action to remedy those conditions.

41. On or about July 15, 2007, defendant Jones contacted defendant Skipworth and informed him of plaintiff's serious medical needs.

42. Defendant Skipworth communicated to defendants Lang and Evans and possibly others regarding plaintiff's serious medical needs.

6

43.     Defendants Skipworth, Lang, and Evans decided that plaintiff would receive no medical treatment and would not be released until the municipal judge returned from vacation on or about July 19, 2007.

44.     From July 15, 2007, through July 19, 2007, the individual police officer defendants denied plaintiff medical treatment for obvious serious medical needs of which they were aware.

45.     The individual police officer defendants were deliberately indifferent to plaintiff's obvious need for medical care.

46.     As a result of the conduct of the individual police officer defendants plaintiff suffered tremendous pain and suffering, was required to undergo two surgeries, spent months recovering, nearly lost his leg, and has residual problems related to the injury.

47.     The decisions of the individual defendants to deny plaintiff medical care were pursuant to one or more municipal policies and customs. These municipal policies and customs included inadequate medical screening of inmates admitted to the jail, inadequate jailer training, allowing untrained police officers to make decisions regarding medical treatment, and denying and delaying necessary medical care to persons with serious medical needs in order to avoid incurring ambulance and hospital charges.

48.     Additionally, the City has a policy and custom of denying individuals a

7

prompt appearance before a judicial officer. The City, acting through the mayor and city council defendants, has intentionally decided to limit the municipal judge's availability in order to save money. The municipal judge is scheduled to come at most only once per week on Thursdays, meaning that individuals arrested on Friday (or late Thursday) may not appear before a judicial officer for 6 days. As a result plaintiff was forced to remain in jail and could not even seek medical care on his own.

49. All of the individual defendants identified above acted with malice and/or with reckless disregard for plaintiff's constitutional rights.

50. As a result of the conduct of all defendants, plaintiff was caused to suffer physical and emotional injuries and damages and increased medical bills.

### Count I - 42 U.S.C. § 1983 - Deliberate Indifference to Serious Medical Needs

51. The individual police officer defendants, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to plaintiff's serious medical needs in that they had knowledge of a physical health condition requiring emergency medical treatment yet refused to obtain or authorize that treatment for plaintiff. These defendants did thereby deprive the plaintiff of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

52. The denial of medical treatment to plaintiff is directly attributable to one

or more customs and/or policies of the City described above.

## Count II - 42 U.S.C. § 1983 - Deliberate Indifference to Health/Safety

53. Defendants Sockwell, Brown, Jones, and Terry, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to plaintiff's health and safety, including both his serious medical needs and the unsanitary and inhumane conditions of his confinement, in that they had knowledge of the conditions yet refused to take action to remedy them. These defendants did thereby deprive the plaintiff of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

54. The denial of medical treatment to plaintiff is directly attributable to one or more customs and/or policies of the City described above.

## Count III - 42 U.S.C. § 1983 - Appearance Before Judicial Officer

55. The mayor and city council defendants, acting under color of state law within the meaning prescribed by 42 U.S.C. § 1983, were deliberately indifferent to plaintiff's right to a prompt appearance before a judicial officer. These defendants did thereby deprive the plaintiff of his rights as a pretrial detainee under the Fourteenth Amendment to the Constitution of the United States in violation of 42 U.S.C. § 1983.

56.     The constitutional violation is directly attributable to one or more customs and/or policies of the City described above.

## Count IV - State Law - Negligence/Carelessness

57.     The individual police officer defendants, acting within the scope of their employment with defendant City, owed a duty to plaintiff to meet the standard of care applicable to inmates experiencing serious medical conditions.

58.     This standard of care required defendants to promptly secure or authorize medical treatment by at least July 15, 2007. Defendants negligently/carelessly and/or wantonly violated this standard of care or caused it to be violated with the foreseeable result that medical treatment needed by plaintiff would be denied to plaintiff's detriment.

59.     This standard of care also required supervisory officials to insure jailers were trained adequately regarding dealing with medical needs and to insure that adequate policies and procedures regarding medical needs were in place. Defendant City's police supervisory officials, including Evans, Lang, and Skipworth, negligently/carelessly violated this standard of care or caused it to be violated with the foreseeable result that medical treatment needed by plaintiff would be denied.

60.     Because the individual defendants and unidentified supervisory officials were acting within the scope of their employment, defendant City is liable to the

extent these individuals were negligent/careless.

## Other Matters

61.  All conditions precedent to the bringing of this suit have occurred.

## Relief Sought

62.  As relief, plaintiff seeks the following:

   a.  That he be awarded such compensatory damages as a jury shall determine from the evidence he is entitled to recover;

   b.  That he be awarded against the individual defendants such punitive damages as a jury shall determine from the evidence he is entitled to recover;

   c.  That he be awarded prejudgment and postjudgment interest at the highest rates allowed by law;

   d.  That he be awarded the costs of this action, his reasonable attorney's fees, and his reasonable expert witness fees;

   e.  That he be awarded an amount to compensate his for any adverse tax consequences as a result of a judgment in his favor; and

   e.  That he be awarded such other and further relief to which he is justly entitled.

**Dated: July 13, 2009.**

Respectfully submitted,

*/s/ Henry F. Sherrod*
_____
Henry F. Sherrod III
Alabama Bar No. ASB-1200-D63H
HENRY F. SHERROD III, P.C.
119 South Court Street
P. O. Box 606
Florence, Alabama 35631-0606
Phone: 256-764-4141
Fax: 877-684-0802
Email: hsherrod@hiwaay.net

Attorney for Plaintiff

## Jury Demand

Plaintiff requests a trial by jury.

*/s/ Henry F. Sherrod*
_____
Henry F. Sherrod III